510 So.2d 1185 (1987)
Steven MOLDTHAN, Appellant,
v.
SENTINEL COMMUNICATIONS COMPANY and Crawford and Company, Appellees.
No. BP-201.
District Court of Appeal of Florida, First District.
August 12, 1987.
*1186 Frederick J. Daniels, of Langston & Hess, Orlando, for appellant.
Lamar D. Oxford, of Dean, Ringers, Morgan & Lawton, Orlando, for appellees.
BARFIELD, Judge.
Steven Moldthan challenges the denial of his claim for workers' compensation benefits, asserting that the deputy commissioner's order is not supported by competent substantial evidence in the record. We remand the case to the deputy commissioner for clarification.
The claimant, who is now a pressman but who began work in the employer's mailroom in 1979, injured his back in 1981, was off work for two days, and returned to work with "on and off" back pain. He soon thereafter voluntarily transferred to the pressroom, where his work duties include loading rolls of paper weighing 1200-1400 pounds each, and stacking paper in bundles.
He was seen by a company doctor in October 1984 complaining of lower back pain. The pain progressively worsened, and he told his supervisor on several occasions that the work was "starting to get to" him. When the pain started down his leg he began to be concerned. In November 1985 he went to a company doctor who diagnosed sciatica and advised him not to work. He was referred to a chiropractor, who noted in the history given him that claimant had experienced back pain on and off since his back injury 5 years ago, that he experienced an "insidious onset" of lumbar back pain which got progressively worse and began radiating down into his left leg, and that he could identify no specific incident.
On November 27, 1985, he was seen by an orthopedic surgeon who diagnosed a herniated disc at L5-S1 and performed surgery in March 1986. In the interim, he was allowed to return to work part-time at light duty. In May, his treating physician anticipated maximum medical improvement by September 1986, with some permanent impairment.
A claim was filed for disability and medical benefits, based on the assertion that the claimant's back injuries were caused by the repeated trauma of his job duties, and that the hazard of his working environment was greater than that to which the general public is exposed. The employer and carrier controverted the claim, asserting that there had been no accident, that medical treatment had never been requested, and that if the claimant's back condition was compensable, they should be allowed a setoff for group disability and medical payments (the claimant's group disability insurance paid most of his medical bills and 100% of his wages for three months, then 60% of his wages for up to a year).
At the hearing in July 1986, the claimant testified that he had experienced no incident of a sudden onset of back discomfort since 1981 and no accident on the job, but that he had experienced "varying episodes of back discomfort" since 1981 both on and *1187 off the job, that he told his supervisor on several occasions of his back problems and that the work was getting to be too much for him, and that he asked his boss several weeks after he first went to the doctor if they were going to pay his workers' compensation. He had indicated on his longterm disability form that he had a pending workers' compensation claim, and that he felt that his back condition resulted from his work activities.
The company doctor testified by deposition that when he saw the claimant in November 1985, the chief complaint was of low back pain, generally on the left side and extending into the left leg. He noted that the claimant said he had done a lot of lifting and heavy work and had been working over the weekends, and that the pain came and went. He felt that the claimant's condition could have been caused by a specific incident of trauma, either external or internal (a blow to the back, a sneeze, a cough), but that it could also have been created over a period of time through repeated effort. He felt that if the condition resulted from a specific incident of trauma it would bring on a sharp, sudden onset of pain, and that if it were caused by repeated effort there would be a gradually worsening condition, with intermittent waxing and waning of complaints.
In response to a hypothetical question based upon the claimant's job description, the doctor testified that the claimant's work activity could contribute to his back condition. He noted that the other company doctor who saw claimant in 1984 had noted no report of a specific incident of trauma, but that the claimant had been having this pain for a long time and that it had been getting worse for the preceding two months. The doctor opined that his findings were causally related to "definitely not a specific injury, but could be a cumulative type of injury," noting that when he saw the claimant in 1985, there was again no history of a specific injury, just "a lot of lifting and heavy work."
The chiropractor testified by deposition that he could relate the claimant's back pain to no specific incident and would have difficulty in determining whether his condition arose out of the course of his employment. He noted the claimant's history of repetitive heavy lifting, bending, twisting and stooping, and opined that the previous injury may have caused a weakness that was aggravated by a series of events.
The orthopedic surgeon testified by deposition that most big herniated discs are insidious, but claimant's disc is not a big one, so that it is hard to gauge whether his was insidious or triggered by one event. He noted that in surgery he observed nerve root irritation which would have occurred over a period of time, but he stated that from November 1985 to March 1986 is "plenty long enough to get nerve root irritation". He testified that the claimant did not report a particular traumatic incident, and that he felt the repetitive heavy work would be the cause of the problem, although he could not say whether the claimant's condition was caused by chronic repetitive strain or a single strain, and that the 1981 accident could also have been the problem.
When asked about the claimant's failure to tell him that he had injured his back lifting paper rolls, the doctor stated that it is not unusual that someone doing heavy repetitive work will have some low back discomfort and think nothing of it, and then when it hits his leg, he thinks about it, but can't remember when he was doing anything because of low back discomfort. The doctor opined that, assuming the claimant had no other history of back problems, his work activities were causally related to his back problem.
The claimant's supervisor testified that his job performance was excellent before he began developing back and leg problems. He admitted that the claimant complained that the job was getting hard on him and that his back was bothering him several months before his leg started bothering him, and that three weeks after that he left work. He testified that no specific incident was ever brought to his attention, that he did not witness any injury, and that he did not therefore report any injury, but *1188 that he had recommended that the claimant see a doctor.
In her order, the deputy commissioner denied the claim in its entirety, finding that the claimant did not suffer an accident or injury arising out of and in the course and scope of his employment, that he never reported an accident, and that she did not find this a case of repetitive trauma, "but more likely a gradual progression from the employee's 1981 injury." The deputy further found that the employer had no notice of an injury or of an accident in November 1985, nor any request for medical treatment, and noted that "group benefits paid the Claimant since that time substantially outweigh any workers' compensation benefits to which he claimed to be entitled."
The record in this case contains no medical testimony that it is more likely that the claimant's present condition was caused by a gradual progression of his 1981 back injury unassisted by his continuing repetitive heavy lifting and bending job duties. The deputy commissioner's order indicates that her conclusions are not based upon disbelief of the claimant's testimony or rejection of the medical evidence presented, but that she felt this was an "either-or" situation (either claimant's condition was caused by a gradual progression of his 1981 injury, or it was caused by repetitive trauma on the job), and that she failed to take into account the possibility that both contributed to his present condition. Such a finding would be supported by the record evidence, including the medical testimony.
Appellant has filed a notice of supplemental authority, citing Slater v. United Parcel Service, 507 So.2d 1146 (Fla. 1st DCA 1987), in which this court reversed the denial of a claim on the grounds the claimant had failed to timely notify the employer and to prove he had sustained an accident arising out of his employment. In that case, a UPS employee experienced pain in his calf the day after Christmas eve, an extremely busy delivery day. A month later, after three visits, his doctor suspected a disc problem and recommended a CT scan which revealed a herniated disc, whereupon the claimant immediately reported an industrial injury. This court found that the claimant's excuse for late notice was satisfactory, that he acted reasonably under the circumstances, and that the deputy, who found no evidence of an unusual event or onset of pain indicative of an accident, had applied an incorrect standard, noting that an unexpected result is sufficient to constitute an accident. The court noted that other reasons, including claimant's lack of credibility, were listed in support of the finding of noncompensability, and remanded the case for a redetermination of this issue, with specific references to those portions of the record supporting such a finding.
In the case at issue, although the record does indicate that the appropriate forms were not filled out, the deputy's findings that the employer had no notice of injury or accident, nor any request for medical treatment, are refuted by the uncontroverted testimony of both the claimant and his supervisor that he had been complaining about his back condition for several months, and about his leg pain for several weeks prior to his seeing the company doctor, and that he related these complaints to his job duties. The deputy commissioner's final note that claimant's group medical insurance benefits "substantially out-weigh any workers' compensation benefits to which he claimed to be entitled" indicate that she may have improperly considered the claimant's medical insurance benefits in her determination of whether his injury was compensable.
We note that there is no evidence in the record that the claimant injured himself in any way outside of his employment. There is no indication in the order that the deputy commissioner rejected any of the testimony presented by the claimant or his doctors; there is essentially no dispute regarding the facts in this case.
The deputy commissioner's order is REVERSED and REMANDED for clarification of her conclusion that this is not a case of repetitive trauma, specifically for findings of fact with regard to whether the claimant was exposed to repeated trauma for a prolonged period of time, whether the *1189 cumulative effect of such exposure was either an injury or aggravation of a pre-existing condition, and whether the claimant's work conditions constitute a hazard greater than that to which the general public is exposed.
Appellant's motion for appellate attorney's fee is granted. In accordance with the rationale of Sierra v. Sierra, 505 So.2d 432 (Fla. 1987), the parties may file within twenty (20) days of this date either a stipulation as to the amount of the fee to be assessed or affidavits as to the value of services on appeal. If there is no response within twenty (20) days, or if either party objects to proceeding on affidavits, Lyle v. Lyle, 167 So.2d 256 (Fla. 2d DCA), cert. denied, 172 So.2d 601 (Fla. 1964); Thoni v. Thoni, 179 So.2d 420 (Fla. 3d DCA 1965), the case will be remanded to the deputy commissioner for determination of the amount of the appellate attorney fee.
MILLS and WENTWORTH, JJ., concur.