WIGGINTON, Judge.
Claimant brings this appeal from an order of the Judge of Compensation Claims denying his claim for benefits on the basis that his injury was not compensable. For the following reasons, we reverse and remand for further proceedings.
Claimant’s job responsibilities with the employer primarily involved his driving a concrete truck. That responsibility, in turn, generally included attaching concrete chutes weighing between 30 and 40 pounds, washing the truck following a pouring of a load of concrete, returning the chutes to their locked positions, and returning the truck to the plant to repeat the process. It was not unusual for claimant to carry three or four loads a day. In addition, claimant drove a dump truck in which he delivered mason sand, rebar wire and mesh wire. Occasionally, he would also drive a front-end loader for the employer. It should be noted that the driving of this equipment to and from the job sites *1342 often entailed his jostling over uneven terrain.
A claim was made for benefits in May 1990 based on a theory of repetitive trauma to his back, the trauma allegedly having led to a herniated disc and to a connected condition known as cauda equina syndrome, with related bladder and urinary tract problems. A notice to controvert was filed, and the employer/carrier defended on the basis of no injury in fact, no injury by accident, no notice, and no causal relationship between any alleged accident and claimant’s subsequent injuries. At the outset of the hearing, claimant was pointedly asked by the JCC whether he was indeed claiming on the basis of repetitive trauma, to which inquiry claimant responded in the affirmative.[1]
In her final order denying benefits, the JCC found no causal relationship between claimant’s alleged injuries and his employment. She based this finding upon the testimony of claimant, the history given to his various physicians, the insurance reports filed, and the testimony, in particular, of Dr. Uricchio, who had conducted a single examination of claimant approximately one year following the incident. The JCC specifically found that the deterioration of claimant’s disc became disabling as of the latter part of October 1989 following a “cough.” She accepted Dr. Uricchio’s testimony that the subsequent cauda equina syndrome was a progressive condition, and while there could have been some accumulative trauma at work, the trauma was no more significant than the day-to-day risk of trauma faced by claimant in his home or with which he involved himself in his social life. The JCC found no indication of a specific work activity causing the subsequent disability on any given dates of employment. Instead, she found that the innocuous “cough” was the “straw that broke Claimant’s back,” giving rise to his disability. She rejected the opinion of Dr. Redding, concluding that his opinion did not take into account the history of a cough initiating claimant’s complaints of pain and disability. She rejected Dr. Hood’s opinions because he seemed unsure of medical causation based upon a reasonable degree of medical probability.
In addition, the JCC found that claimant failed to give proper notice to the E/C and that the E/C had been prejudiced thereby.
On appeal, claimant raises several points challenging the JCC’s findings and conclusions of law. Initially, we agree with claimant that there is indeed an absence of competent and substantial evidence to support the JCC’s order on the issue of com-pensability, as well as a concomitant error in her determination that claimant failed to satisfy the necessary elements of the repetitive trauma theory. Moreover, we also agree with claimant that under the circumstances, his failure to give notice was excusable.[2]
To begin our analysis, we agree with claimant that there are a number of flaws in the JCC’s findings of fact. For example, there is no evidence in the record supporting her finding that the deterioration of claimant’s disc became disabling as of “the latter part of October, 1989 following a cough.” In the testimony of both Dr. Uricchio and Dr. Hood, the cough was viewed as the precipitating cause of claimant’s symptoms and pain, but never as the sole cause of the resultant cauda equina syndrome. While Dr. Uricchio did testify that the accumulated trauma at work was no more significant than the day-to-day risk of trauma in claimant’s home or social life, Dr. Uricchio’s ignorance of claimant’s day-to-day living conditions at the relevant point in time erodes the probative value of his opinion.
Notwithstanding, there was no question in Dr. Uricchio’s mind that with claimant’s coughing episode having set the stage, *1343 multiple repetitive episodes could have thereafter actually caused the rupture of the disc. In that respect, it was Dr. Uric-chio’s considered opinion that claimant probably had suffered some earlier injury to his disc (perhaps two to three times) resulting in some annular cracks and dehydration, and that the cough caused a greater split in the first part of the disc herniation. Dr. Uricchio went on to opine that over the next two months following the cough, this deterioration progressed due to various other more minor episodes of trauma, leading ultimately to the final retropulsion of the disc. That opinion, in fact, is not inconsistent with the opinion of Dr. Hood, who, however, accorded more significance to claimant’s work activities.
The "JCC also stated there was no indication that a specific work activity caused the subsequent disability on any given date of employment. That finding is in fact correct; however, the finding is nonetheless irrelevant to a repetitive trauma-type theory of compensability which does not require a single, unexpected or unusual event. See Slater v. United Parcel Service, 507 So.2d 1146 (Fla. 1st DCA 1987).
As discussed above, the JCC further found that it was the cough “that was the straw that broke the Claimant’s back giving rise to the Claimant’s disability.” Again, there is absolutely no evidence in the record to support such a finding. Rather, it was Dr. Uricchio’s opinion that it was “something [that] happened a day or two before the MRI that finally ‘broke the camel’s back’ ” (emphasis added), but Dr. Uricchio could not pinpoint exactly what single episode precipitated the ultimate rupture.
As to Dr. Redding’s opinion, we likewise find discrepancies between the JCC’s findings and the actual evidence. Significantly the JCC rejected Dr. Redding’s opinion on the basis it did not take into account the history of a cough initiating claimant’s complaints of pain and disability. However, it is clear from the doctor’s deposition that once he was informed of that fact, he was unwilling to accord the coughing episode the status of a precipitating cause of the herniated disc.
Finally, the JCC’s reason for her rejection of Dr. Hood’s opinion is completely unfounded. Although Dr. Hood—as was true with every other physician testifying—was unsure as to the actual date of the disc rupture, he was absolutely and emphatically certain regarding the medical causation as being an “accumulation of stresses to the disc over a period of time.” At one point, Dr. Hood opined that claimant’s work “was just one of many factors in a series of events leading to his ruptured disc.” Nonetheless, he went on to state that claimant’s job was “a very significant source of aggravation” to claimant’s back that ultimately resulted in claimant’s profound problem. He also opined that claimant’s rupture was not nearly as bad in October with the onset of claimant’s pain as it was when the MRI was done, and that claimant’s job certainly could have been a factor in worsening the condition. He followed up with his statement that the cauda equina syndrome does not require a sudden event but, instead, is brought about by an accumulation of events or a series of causes, and that in claimant’s case, “the dam finally broke.” He concluded by saying that “the degree of profound disc protrusion or occupation, if you would, of the spinal canal could not have existed in October with the history of the thing that he did from October until January. I think its very very unlikely.”
Thus, from the foregoing, it is clear that some serious misperceptions existed on the JCC’s part regarding the testimony presented. However, in addition, we find the JCC’s order displays a fundamental misconception regarding the elements of the repetitive trauma theory. Turning once again to her findings, it appears at first glance that the JCC attempted to analyze the issue in terms of the repetitive trauma theory by accepting Dr. Uricchio’s testimony that the subsequent cauda equi-na theory was a progressive condition. Nevertheless, her focus thereafter shifted back to the perceived necessity of there being an unexpected or unusual event on a *1344 given date of employment. Again, we note the specific finding that the “cough” was the “straw that broke the Claimant’s back,” but, as noted above, there was no evidence suggesting that the cough was in fact the sole cause of claimant’s ultimate disability. Clearly, by focusing on a perceived need for an “unusual event” that was work-connected — generally indicative of a compensable accident — the JCC failed to consider the possibility that claimant suffered repetitive trauma on the job. That possibility, when taken in conjunction with the natural progression of claimant’s disc disease made symptomatic by his coughing, might have led to a finding of an “unexpected or unusual” result sufficient to constitute an accident under section 440.-02(1), Florida Statutes (1989). See Slater v. United Parcel Service. Cf., Moldthan v. Sentinel Communications Company, 510 So.2d 1185 (Fla. 1st DCA 1987).
In light of the foregoing, we are compelled to remand the cause to the JCC with directions that she apply the correct legal analysis and revisit her conclusion that no compensable injury occurred absent the now discredited findings. As we instructed in Slater, if on remand the JCC once again determines that compensability be denied based upon any other factors reflected in the record or in the order on review, she is directed to reference with specificity those portions of the record supporting any such finding.[3]
REVERSED and REMANDED for further proceedings consistent with this opinion.
BOOTH and WEBSTER, JJ., concur.

. Thus, although the E/C suggest otherwise, claimant did not advance alternative bases for recovery below, but relied solely on the repetitive trauma theory. This observation will be seen as significant to a proper analysis of the JCC’s order.

. We find the resolution of the notice issue to be controlled by our decisions in Moldthan v. Sentinel Communications Company, 510 So.2d 1185 (Fla. 1st DCA 1987), and Slater v. United Parcel Service, 507 So.2d 1146 (Fla. 1st DCA 1987), and therefore decline to discuss it further.

. The last portion of the order, denying claimant costs, penalties, interest and fees, is also remanded for further consideration by the JCC in the event she determines the claim to be compensable.